**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| DAWN PONTON, individually and on behalf of a class of all persons and entities similarly situated, | Case No. |
| | CLASS ACTION COMPLAINT |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| FLY VAUNT, LLC, | |
| Defendant. | |

**PRELIMINARY STATEMENT**

1. Telemarketing calls are intrusive. "A great many people object to these calls and messages, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…[P]rivate suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer,* 925 F.3d at 649-50.

3. Plaintiff Dawn Ponton ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendant violated the TCPA by calling her and others who had previously asked to no longer receive calls.

4. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

5. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure

## PARTIES

6. Plaintiff is an individual residing in Arizona.

7. Defendant is a company that sources private jet access to consumers and is headquartered in Chamblee, DeKalb County, Georgia.

**JURISDICTION & VENUE**

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to the Plaintiff and the putative class that are the subject of the litigation were sent into this District and to encourage the purchase of services to be provided in this District. As such, a substantial part of the events giving rise to the claims occurred in this District.

**TCPA BACKGROUND**

10. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

11. Relevantly, the TCPA provides private rights of action for three types of telemarketing-related conduct.

12. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

14. Pursuant to this statutory mandate, the FCC ordered that telemarketers maintain procedures for honoring do-not-call requests, including a written policy and training, with violations actionable if two or more telephone solicitations are made after a request to stop.

**FACTUAL ALLEGATIONS**

15. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

16. Plaintiff's telephone number is 727-XXX-XXXX.

17. Plaintiff uses this telephone number for personal, residential and household purposes.

18. Plaintiff has never been a customer of Defendant.

19. Plaintiff clicked on their Facebook advertisement in early 2025 and gave them her phone number.

20. However, after deciding she was not interested in their services, she made a do not call request.

21. Despite this request, Plaintiff began receiving text messages from Defendant in October 2025.

22. The text messages were sent with the purpose of advertising Defendant's private jet service.

23. Plaintiff received at least 8 text messages from Defendant.

24. On October 21, 2025, Defendant sent the following text message at 8:01 a.m. from (945) 365-1601:

> Just following up, this is Tom at Vaunt. Totally get it—Unlimited private jet travel. I get it—it sounds crazy. Most people think there's a catch. Want to hear how it actually works? Reply "READY" and we'll walk you through it. No pressure.

25. On October 22, 2025, Defendant sent the following text message to Plaintiff at 8:01 a.m. from (468) 598-9947:

> Just checking in—this is Tom at Vaunt again. Still holding the 3 free months offer for Cabin+ at $7995/year. It's all-in: unlimited flights, bigger jets, no extra charges. Got a few questions? Reply "TALK" and I'll walk you through how it works.

26. Plaintiff responded, "Stop."

27. Despite telling Defendant to stop, on October 23, 2025, Defendant sent Plaintiff the following text message at 8:04 a.m. from (469) 598-9947:

CLASS ACTION COMPLAINT
Page 4

Quick follow-up—this is Tom at Vaunt. We're still running the extended 3-month Cabin+ promo at $7,995/year. That's unlimited flights, no extra fees, and access to our larger jets. Have a few questions?...

28. On October 24, 2025, Defendant sent Plaintiff the following text message at 8:08 a.m. from (469) 768-1023:

Quick reminder—it's Tom at Vaunt. Still offering $500 off Cabin+--now $7,495/year for unlimited private jet access, larger jets, and zero extra fees. Want to hear how members are using it? Reply "JET" and I'll walk you through it today.

29. Plaintiff responded, "Stop."

30. Again, despite telling Defendant to stop on two prior occasions, on October 24, 2025, Defendant sent Plaintiff the following text message at 11:06 a.m. from (469) 768-1023:

Greetings, I'm Daniella, a researcher at Vaunt (the members-only app for getting on unlimited private jets for $7,995/year with Cabin+). Quick question: If past special offers didn't quite work, I'd love to know what would? Reply with a number: 1 – if a $1000 discount today would get you to join 2 – if you need more flights 3 – if you need more guaranteed flights. Or just skip the numbers and tell us what you need.

31. Plaintiff again responded, "Stop."

32. On October 25, 2025, Defendant sent Plaintiff the following text message at 8:08 a.m. from (469) 768-1023:

Gentle nudge—it's Daniella at Vaunt. Yesterday I asked what might help you finally join Cabin+ (unlimited private jet flights for $7,995/year). If none of the options hit the mark, feel free to just reply and tell me what would actually make this work for you. We're listening.

33. Plaintiff responded "Stop."

34. On October 27, Defendant sent Plaintiff the following text message at 9:22 a.m. from (469) 768-1023:

Hi, it's Tom at Vaunt (the private jet app). We've never done this before—if you join Cabin+ at $7,995/year, we'll add 6 free months to your membership. That's unlimited private jet flights, no extra fees, and access to our 8-10 seat jets. Is this finally the right fit? Reply "READY" and I'll walk you through it.

35. Plaintiff responded, "Stop" for the fifth time.

36. Finally, on October 28, Defendant sent Plaintiff a text message at 11:06 a.m. from (469) 768-1023:

> Hey, Dawn, it's Tom at Vaunt. This is our strongest Cabin+ deal yet ever: [green check mark emoji] $1000 off…

37. The text messages were intended to promote Defendant's business.

38. The text messages and calls, as is plainly evident from their content, were all made to encourage the Plaintiff to purchase the Defendant's products and services.

39. Under the TCPA, and as recognized by the Supreme Court, text messages qualify as "calls." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156-57 (2016).

40. Plaintiff's privacy has been violated by the above-described telemarketing calls.

41. The calls were all unwanted, nonconsensual encounters.

42. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

43. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

44. Plaintiff brings this action on behalf of herself and the following classes (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

45. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **Internal DNC Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf class of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

46. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the Class members.

47. Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

48. Members of the Class as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

49. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

50. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

51. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

52. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

53. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including, but not limited to, the following:

   a. Whether Defendant honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

   b. whether the telemarketing calls at issue were made to Plaintiff and members of the Class without first obtaining prior express written consent to make the call;

   c. whether Defendant's conduct constitutes violations of the TCPA; and

   d. whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

54. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

55. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

56. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

57. Excluded from the Class are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

58. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

### Telephone Consumer Protection Act

### Violations of the TCPA, 47 U.S.C. § 227

### (On Behalf of Plaintiff and the Internal DNC Class)

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

61. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

62.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the Class as alleged herein;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned as counsel for the Class;

D. Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E. Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendant from making calls to those who have asked them to stop;

F. Attorneys' fees and costs, as permitted by law; and

G. Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

*[Counsel signature block to follow on next page.]*

RESPECTFULLY SUBMITTED AND DATED this 18th day of December, 2025.

/s/ *Carly M. Roman*
Carly M. Roman (SBN No. 040895)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

Anthony Paronich
(*pro hac vice anticipated*)
**PARONICH LAW PC**
350 Lincoln St. Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff*