**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**PHOENIX DIVISON**

| | |
|---|---|
| Dawn Ponton, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Fly Vaunt, LLC,<br><br>Defendant. | Case No. 2:25-cv-4763-SHD<br><br>Honorable Judge Sharad H. Desai |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

ARGUMENT .................................................................................................................. 2

    1.    Whether Defendant honored Ms. Ponton's opt-out request within a reasonable time is a question of fact not appropriate for resolution on a Motion to Dismiss. ...... 2

    2.    Ms. Ponton plausibly alleges "willful" or "knowing" conduct to support treble damages .................................................................................................................. 6

    3.    The Court should deny Fly Vaunt's motion to strike the class allegations prior to Discovery. ..................................................................................................................... 7

CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*,
718 F. Supp. 2d 1167 (N.D. Cal. 2010). ..............................................................................8

*Boger v. Citrix Sys.*,
2020 U.S. Dist. LEXIS 36517 (D. Md. Mar. 3, 2020)......................................................3

*Buja v. Novation Cap., Ltd. Liab. Co.*,
2017 U.S. Dist. LEXIS 231500 (S.D. Fla. Mar. 30, 2017)..............................................3

*Cheatham v. ADT Corp.*,
161 F. Supp. 3d 815 (D. Ariz. 2016)................................................................................8

*Crews v. Sun Sols. AZ LLC*,
2024 U.S. Dist. LEXIS 102467 (D. Ariz. June 10, 2024) ...............................................4

*Delgado v. Emortgage Funding, LLC*,
2021 U.S. Dist. LEXIS 196785 (E.D. Mich. Oct. 13, 2021).........................................3

*Gill v. Align Tech. Inc.*,
2022 U.S. Dist. LEXIS 87464 (E.D. Wis. May 16, 2022).........................................3, 9

*In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*,
289 F.R.D. 526 (N.D. Cal. 2012) ..................................................................................11

*In re NVIDIA GPU Litig.*,
2009 U.S. Dist. LEXIS 108500, 2009 WL 4020104 (N.D. Cal. Nov. 19, 2009) ...........8

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
40 FCC Rcd. 2395 (F.C.C. Apr. 7, 2025)........................................................................5

*Iniguez v. CBE Grp.*,
969 F.Supp.2d 1241 (E.D. Cal. 2013).............................................................................8

*Kamar v. RadioShack Corp.,*
375 F. App'x 734 (9th Cir. 2010). ...................................................................................9

*Keifer v. HOSOPO Corp.*,
2018 U.S. Dist. LEXIS 183468, 2018 WL 5295011 (S.D. Cal. Oct. 25, 2018) ............7

*Law Offices of Leonard I. Desser, P.C. v. Shamrock Communs., Inc.*,
    2013 U.S. Dist. LEXIS 94268, 2013 WL 2244811 (D. Md. May 21, 2013)..................8

*Martin v. Comcast Corp.*,
    2013 U.S. Dist. LEXIS 169221, 2013 WL 6229934 (N.D. Ill. Nov. 26, 2013) .............3

*Melgar v. CSK Auto, Inc.*,
    681 F. App'x 605 (9th Cir. 2017) ...................................................................................9

*Menin v. Star Markets Co., Inc.*,
    2024 U.S. Dist. LEXIS 161422 (D. Mass. Sept. 9, 2024) ..............................................9

*Meyer v. Bebe Stores, Inc.*,
    2015 U.S. Dist. LEXIS 12060, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015) ..................7

*Nece v. Quicken Loans, Inc.*,
    2018 U.S. Dist. LEXIS 42356, 2018 WL 1326885 (M.D. Fla. Mar. 15, 2018) .............3

*Olney v. Job.Com, Inc.*,
    2013 U.S. Dist. LEXIS 141339, 2013 WL 5476813 (E.D. Cal. Sept. 30, 2013) .........11

*Pacleb v. Cops Monitoring*,
    2014 U.S. Dist. LEXIS 91976, 2014 WL 3101426 (C.D. Cal. July 7, 2014).................7

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
    352 F. Supp. 2d 1048 (N.D. Cal. 2004) .........................................................................8

*St. Louis Heart Center, Inc. v. Forest Pharms., Inc.*,
    2013 U.S. Dist. LEXIS 35563, 2013 WL 1076540 (E.D. Mo. Mar. 13, 2013) ..............8

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010).........................................................................................7

*Winters v. Loan Depot LLC*,
    2022 U.S. Dist. LEXIS 47778 (D. Ariz. Mar. 17, 2022) ........................................10, 11

*Winters v. Quicken Loans Inc.*,
    2020 U.S. Dist. LEXIS 162718, 2020 WL 5292002 (D. Ariz. Sept. 4, 2020)................7

*Wyshak v. City Nat'l Bank*,
    607 F.2d 824 (9th Cir. 1977).........................................................................................8

**Statutes and Regulations**

47 U.S.C. § 227(c)(5) .................................................................................................................6

47 C.F.R. § 64.1200(d) ..........................................................................................................2, 6

47 C.F.R. § 64.1200(d)(3)........................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 12(f) ...........................................................................................................7, 8, 11

**INTRODUCTION**

This case presents a straightforward violation of the Telephone Consumer Protection Act ("TCPA"): Defendant continued sending telemarketing text messages to Ms. Ponton even after she repeatedly and unequivocally told Defendant to stop. Far from a single inadvertent delay, Defendant's conduct reflects a systemic failure to honor do-not-call requests despite possessing the technology to do so instantly.

Defendant's motion attempts to recast the TCPA as providing a blanket "grace period" for continued telemarketing after a consumer revokes consent. That is not the law. The governing regulation requires compliance within a "reasonable time," and what is reasonable depends on the circumstances—including Defendant's use of an automated system capable of immediate suppression. Here, Ms. Ponton alleges that Defendant ignored multiple opt-out requests and continued sending messages for six days. Those allegations easily state a plausible TCPA claim. At this stage, the Court must accept Ms. Ponton's well-pleaded allegations as true. When it does, dismissal is inappropriate.

**BACKGROUND**

Ms. Ponton uses her cellular telephone for personal and residential purposes. ECF No. 16 ¶¶ 16–17. She provided her phone number to Defendant after clicking on a Facebook advertisement but later decided she was not interested in Defendant's services. *Id.* ¶¶ 19–20. Defendant sent Ms. Ponton a series of telemarketing text messages promoting its private jet services. *Id.* ¶¶ 35–38. On October 22, 2025, Ms. Ponton responded "Stop," thereby revoking consent and making a do-not-call request. *Id.* ¶ 40. Despite this clear instruction, Defendant continued sending telemarketing messages. *Id.* ¶¶ 41–50.

Ms. Ponton did not send a single opt-out request—she sent multiple. Specifically, she responded "Stop" on October 22, October 24 (twice), October 25, and October 27. *Id.* ¶¶ 40, 43, 45, 47, 49. Nevertheless, Defendant continued transmitting marketing messages through October 28, 2025. *Id.* ¶ 50. As such, Defendant did not honor Ms. Ponton's opt-out request for a week.

Ms. Ponton alleges that Defendant used an automated SMS platform capable of receiving and processing opt-out requests in real time and immediately suppressing telephone numbers from further messaging. *Id.* ¶¶ 21–25. There was no technological barrier preventing Defendant from honoring Ms. Ponton's request immediately. *Id.* ¶ 26. Based on this conduct, Ms. Ponton asserts that Defendant violated the TCPA by sending telemarketing messages after a do-not-call request and did so willfully or knowingly. *Id.* ¶¶ 74–75.

## ARGUMENT

**1. Whether Defendant honored Ms. Ponton's opt-out request within a reasonable time is a question of fact not appropriate for resolution on a Motion to Dismiss.**

Section 64.1200(d) plainly states that companies like Defendant must promptly record do-not-call requests when made and to honor those requests within a reasonable time thereafter:

> If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list ***at the time the request is made***. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request ***within a reasonable time from the date such request is made***. This period may not exceed ten (10) business days from the receipt of such request.

(emphasis added). Fly Vaunt argues that Section 64.1200(d)(3) establishes the reasonableness of a call less than 10 business days after a do-not-call request, but a plain reading of this Section establishes only the converse, that is, the unreasonableness of a call more than 10 business days after the request. Thus, what constitutes a "reasonable time" is a question of fact, because the regulation does not state that any shorter time is per se reasonable.

The majority view follows this plain reading of the regulation and holds that there is no safe harbor; instead, whether a defendant acted within a "reasonable time" is a question of fact that must be answered by a jury. *See Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS, 2022 U.S. Dist. LEXIS 87464, at *8 (E.D. Wis. May 16, 2022) ("the Reasonableness of Align's Efforts to Honor the Do Not Call Request is a Question for the Jury"); *Delgado v. Emortgage Funding, LLC*, No. 21-CV-11401, 2021 U.S. Dist. LEXIS 196785, at *12-13 (E.D. Mich. Oct. 13, 2021) ("Although § 64.1200(d)(3) states that a thirty-day delay in honoring do not call requests is per se unreasonable, it does not state that any shorter delay is per se reasonable."); *Boger v. Citrix Sys.*, Civil Action No. 8:19-cv-01234-PX, 2020 U.S. Dist. LEXIS 36517, at *14 (D. Md. Mar. 3, 2020) ("The provision does not, as Citrix suggests, create a safe harbor for follow up calls placed within thirty days after the first call. More to the point, whether Citrix put Boger on the Do-Not-Call list within a 'reasonable time' is a question of fact best left for development in discovery."); *Nece v. Quicken Loans, Inc.*, No. 8:16-CV-2605-T-23CPT, 2018 U.S. Dist. LEXIS 42356, 2018 WL 1326885, at *7 (M.D. Fla. Mar. 15, 2018) ("a jury must decide whether Quicken honored Nece's do-not-call request in a reasonable time."); *Buja v. Novation Cap., Ltd. Liab. Co.*, No. 15-81002-CIV-MARRA, 2017 U.S. Dist. LEXIS 231500, at *18-19 (S.D. Fla. Mar. 30, 2017) (declining to decide as a matter of law that two or three weeks for a telemarketer to honor a plaintiff's DNC request was a reasonable amount of time); *Martin v. Comcast Corp.*, No. 12 C 6421, 2013 U.S. Dist. LEXIS 169221, 2013 WL 6229934, at *6 (N.D. Ill. Nov. 26, 2013) (declining to decide as a matter of law that one or two weeks for a telemarketer to honor a plaintiff's DNC request was a reasonable amount of time).

As the *Gill* court observed, reasonableness is a jury question because "if [a defendant's] system was such that it could easily and immediately remove a person from a call list, then perhaps a jury would find that it was unreasonable to call that person within an hour of their do-not-call request. In any case, it is an issue for the fact-finding stage of this matter." *Gill*, 2022 U.S. Dist. LEXIS 87464, at *10. This is precisely the issue here.

Ms. Ponton alleges that Defendant used an automated SMS platform that automatically recognizes opt-out keywords (*e.g.*, "STOP"), logs inbound responses, and is capable of immediately suppressing telephone numbers from further marketing messages—*i.e.*, there was no technological impediment to honoring an opt-out request immediately. ECF No. 16 ¶¶ 21–26.

Ms. Ponton further alleges that she sent multiple, repeated "STOP" replies (Oct. 22; Oct. 24 (twice); Oct. 25; Oct. 27), that Defendant's system received and logged those replies (giving Defendant actual notice of revocation), and yet Defendant continued to transmit marketing texts over the following days (including at least eight messages through Oct. 28). ECF No. 16 ¶¶ 29, 32–37, 38–50. Under these circumstances, a reasonable jury could readily conclude that Defendant's failure to promptly implement Ms. Ponton's opt-out requests—and its continued messaging despite actual notice—was unreasonable.

The Defendant heavily relies on *Crews v. Sun Sols. AZ LLC*, 2024 U.S. Dist. LEXIS 102467 (D. Ariz. June 10, 2024). However, *Crews* applied the prior regulations and resolved a default-judgment motion, where the court was confined to the *pro se* plaintiff's limited and largely conclusory allegations and declined to infer unreasonableness absent supporting facts. *Id.* at *1, The court held that text messages sent 11 days after a seller-specific do-not-call request were "within a reasonable time (not to exceed 30 days)" under the then-operative §64.1200(d)(3). *Crews* expressly relied on the former 30-day ceiling, as well as the complaint's allegations that the communications ceased shortly after the request combined with the absence of any allegation that the defendant lacked adequate internal do-not-call procedures. Notably, however, *Crews* nonetheless conceded that §64.1200(d)(3) sets only a outer boundary of unreasonableness: "alternatively, even if liability might theoretically be available for a communication sent during the 30-day grace period . . . the complaint is devoid of facts that plausibly suggest Sun Solutions fails to honor do-not-call requests in a reasonable amount of time." *Crews*, 2024 U.S. Dist. LEXIS 102467, at *15. That critical deficiency is not present here, where Ms. Ponton alleges

detailed facts showing that Defendant's system automatically processed opt-out requests and was capable of immediate suppression, yet Defendant continued sending messages after receiving multiple "STOP" requests.

Second, the FCC has since revised §64.1200(d)(3). The rule now separately requires that a caller "record the request and place the subscriber's name . . . on the do-not-call list at the time the request is made," and it reduces the outer bound from 30 days to ten (10) business days. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, 40 FCC Rcd. 2395 (F.C.C. Apr. 7, 2025). That amendment makes immediate recording and prompt processing central to the reasonableness inquiry in a way the prior text did not. The Commission expressly paired that immediate-recording requirement with a shortened outer limit of ten business days in recognition that technological advances make prompt processing readily achievable, and because consumers are "understandably frustrated" when they continue to receive calls or texts "days or even weeks" after making a stop request. *See* Exhibit 1, FCC Report & Order ¶¶ 19–21. Specifically, the Commission explained that consumers "are understandably frustrated when they receive robocalls and robotext messages days or even weeks following a request to stop such communications," and that technological advances "provide callers and senders of text messages with the tools they need to process all do-not-call and consent-revocation requests quickly, and certainly within 10 business days." *Id.* at ¶¶ 20–21. Thus, a defendant's *actual* ability to log and suppress STOP replies — and whether the defendant *did* in fact log those replies — is squarely probative of whether any delay was reasonable.

Third, and most importantly, Ponton's First Amended Complaint alleges facts the *Crews* complaint lacked: Defendant's automated platform automatically recognizes opt-out keywords, logs inbound replies, and is capable of immediate suppression (ECF No. 16 ¶¶ 21–26) and that the Ms. Ponton sent multiple "STOP" replies on multiple days and yet received numerous marketing messages after revocation (ECF No. 16 ¶¶ 29, 32–50). Those allegations are directly probative under the amended rule and make reasonableness

a live factual question unsuited for dismissal. At a minimum, *Crews* does not establish that dismissal is required where the regulatory text has changed and the First Amended Complaint contains precisely the type of real-time recording, multiple opt-out, and continued-messaging allegations the amended rule makes relevant. Under these circumstances, a jury could readily find that Defendant failed to act reasonably, making *Crews* inapposite.

In sum, this Court should adopt the majority view on this issue. Section 64.1200(d) does not create a safe harbor period allowing telemarketers like Defendant to continue to harass consumers after a stop request for 10 days. At most, the regulation sets an outer limit on what is unreasonable—not a conclusive benchmark for reasonableness—and thus does not render calls or texts within that period per se lawful. Defendant was still required to act reasonably under the circumstances, which it failed to do here, given that it immediately recognized Ms. Ponton's opt-out request but continued texting Ms. Ponton six days later. Accordingly, whether Defendant acted reasonably presents a question of fact for the jury.

### 2. Ms. Ponton plausibly alleges "willful" or "knowing" conduct to support treble damages.

The TCPA authorizes trebled statutory damages where a defendant "willfully or knowingly" violates the statute. 47 U.S.C. § 227(c)(5). The Amended Complaint contains concrete factual allegations from which willfulness or knowing conduct can reasonably be inferred: (1) Ms. Ponton repeatedly replied "STOP" (Oct. 22; Oct. 24 twice; Oct. 25; Oct. 27) (ECF No. 16 ¶¶ 40, 43, 45, 47, 49); (2) Ms. Ponton pleads that Defendant used an automated SMS platform that automatically recognizes opt-out keywords, receives and logs inbound replies in real time, and is capable of immediately suppressing telephone numbers from further campaigns (ECF No. 16 ¶¶ 21–26); (3) Ms. Ponton pleads that Defendant's system in fact received and logged her STOP replies (ECF No. 16 ¶¶ 25, 32–33); and (4) despite actual, recorded notice, Defendant continued to send multiple marketing texts over the following days (including at least eight messages through Oct.

28) (ECF No. 16 ¶¶ 35–38, 41–50). Those are factual, not conclusory, allegations — and they are exactly the type of factual material courts find sufficient to plausibly infer willful and knowing violations, because they show Defendant persisted in sending telemarketing solicitations even after receiving and recording multiple revocations. *See e.g. Winters v. Quicken Loans Inc.*, 2020 U.S. Dist. LEXIS 162718, 2020 WL 5292002, at *4-5 (D. Ariz. Sept. 4, 2020) (observing that allegations that "on at least one occasion, [plaintiff] . . . told [d]efendant to stop calling" and that defendant's conduct constituted "knowing and/or willful violations of the TCPA" were sufficient to withstand a motion to dismiss) (internal quotations omitted).[1]

### 3. The Court should deny Fly Vaunt's motion to strike the class allegations prior to Discovery.

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Motions to strike "are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d

---

[1] Additionally, several Ninth Circuit district courts have held simply alleging "'knowing and/or willful' TCPA violations for purposes of seeking treble damages" is sufficient to withstand a motion to dismiss. *Meyer v. Bebe Stores, Inc.*, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at *4 (N.D. Cal. Feb. 2, 2015). *See also Keifer v. HOSOPO Corp.*, 2018 U.S. Dist. LEXIS 183468, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018) (holding plaintiff's allegation that defendant's actions constituted "knowing and/or willful violations of the TCPA" was sufficient to withstand a motion to dismiss); Pacleb v. Cops Monitoring, 2014 U.S. Dist. LEXIS 91976, 2014 WL 3101426, at * 4 (C.D. Cal. July 7, 2014) (finding an allegation that "defendant's conduct constituted multiple knowing and/or willful violations of the TCPA" sufficient to withstand a motion to dismiss).

1167, 1170 (N.D. Cal. 2010). As such, a motion to strike should only be granted when "the law is clear beyond reasonable dispute" and "the relevant claim or defense could not succeed under any set of circumstances." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016). *See also Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (motions to strike "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation."). In ruling on a motion to strike under Rule 12(f), the court must view the pleading in the light most favorable to the nonmoving party. *Cheatham*, 161 F. Supp. 3d at 834. If a motion to strike is granted, "[i]n the absence of prejudice to the opposing party, leave to amend should be freely given." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1977).

Successful motions to strike class allegations are particularly rare in TCPA cases. *Iniguez v. CBE Grp.*, 969 F.Supp.2d 1241, 1248 (E.D. Cal. 2013) (denying a motion to strike class allegations in a TCPA case, and stating that "[t]he sufficiency of Plaintiff's class allegations are better addressed in Plaintiff's pending motion for class certification"); *Law Offices of Leonard I. Desser, P.C. v. Shamrock Communs., Inc.*, 2013 U.S. Dist. LEXIS 94268, 2013 WL 2244811, at *2-3 (D. Md. May 21, 2013) (denying a motion to strike class allegations in a TCPA case, and stating that "[a]t the proper juncture in this case, and when all concerned are fully informed as to [the] relevant circumstances, the Court will entertain a motion for class certification. As of now, discovery has not concluded. For the most part, Defendant remains firmly in control of the evidence that would bear upon the certification decision"); *St. Louis Heart Center, Inc. v. Forest Pharms., Inc.*, 2013 U.S. Dist. LEXIS 35563, 2013 WL 1076540 at *7 (E.D. Mo. Mar. 13, 2013) (denying a motion to dismiss or strike class allegations in a TCPA case); *In re NVIDIA GPU Litig.*, 2009 U.S. Dist. LEXIS 108500, 2009 WL 4020104, at *13 (N.D. Cal. Nov. 19, 2009) ("A determination of the ascertainability and manageability of the putative class in light of the class allegations is best addressed at the class certification stage of the litigation").

Fly Vaunt complains that the Internal DNC Class is an impermissible fail-safe class. A fail-safe class is one that "limit[s] membership to plaintiffs described by their theory of liability in the class definition such that the definition presupposes success on the merits." Melgar v. CSK Auto, Inc., 681 F. App'x 605, 607 (9th Cir. 2017); *see also* Kamar v. RadioShack Corp., 375 F. App'x 734, 736 (9th Cir. 2010). In other words, a class is a fail-safe if membership depends on the merits — *i.e.*, if a putative member can be a class member only if that person *already* prevails on the merits, or if losing on the merits necessarily excludes the person from the class. Here, the revised Internal DNC Class  is not a fail-safe class for two independent reasons.

First, the proposed class is objectively ascertainable from Defendant's own records. The class is defined in purely objective terms: persons "to whom Defendant (or a third party acting on its behalf) sent two or more telemarketing calls or text messages within any 12-month period, where Defendant's records reflect that the person previously submitted a do-not-call or opt-out request, within four years prior to the filing of the Complaint." ECF No. 16 at ¶ 59 (emphasis added). That definition does not require a court to make any merits determination to *identify* class members — it requires only a machine-examination of Fly Vaunt's records (or its dialer records): did Fly Vaunt's records *reflect* (1) a prior opt-out entry and (2) two or more telemarketing texts/calls in a 12-month period? These are objective, administrable criteria that the defendant can (and should be able to) supply from its logs, suppression files, and campaign records. Courts routinely accept class definitions that rely on a defendant's own business records because such definitions permit ready identification of class members without deciding liability. *See, e.g., Menin v. Star Markets Co., Inc.*, No. 1:23-cv-11918-DJC, 2024 U.S. Dist. LEXIS 161422, at *9-11 (D. Mass. Sept. 9, 2024) (denying a motion to dismiss based on similar record-based criteria); *Gill*, 2022 U.S. Dist. LEXIS 87464, at *10 (reasonableness and class membership could be proved through defendant's internal records and protocols).

Second, and relatedly, membership under Ms. Ponton's definition does not require a finding that a putative class member *prevailed* on the merits. The class definition is

anchored in objective criteria—whether Fly Vaunt's records reflect a prior opt-out and subsequent messages—not on any legal determination that those subsequent messages were unlawful under § 64.1200(d)(3). Questions such as whether the recorded opt-out was effective, whether the subsequent communications violated the statute, or whether any delay was "reasonable" go to liability and will be resolved on the merits, but they do not determine *who* falls within the class under the plain text of Plaintiff's definition.

Fly Vaunt's related contention that the class is facially unworkable because it purportedly requires individualized inquiries likewise fails at the pleading stage. Courts deny motions to strike where the class can be defined and ascertained through common, objective evidence and where the necessary variations can be managed at certification. The supposed "individualized" issues Fly Vaunt identifies (timing of an opt-out, scope of the request, and reasonableness of the response) do not defeat ascertainability or administrability because they arise from, and can be evaluated using, common proof. Those questions turn on uniform evidence regarding Fly Vaunt's systems, logs, suppression rules, and vendor records, such as whether Fly Vaunt's system recorded each opt-out, how the system suppressed numbers, how suppression failures occurred, and whether Fly Vaunt implemented company-wide policies and training. In other words, the relevant inquiry does not consist of person-by-person determinations, but rather a cohesive examination of Fly Vaunt's centralized practices and records, which can be addressed on a class-wide basis and managed through common proof.

Unlike the fail-safe class rejected in *Winters v. Loan Depot LLC,* 2022 U.S. Dist. LEXIS 47778, at *17 (D. Ariz. Mar. 17, 2022), relied on heavily by the Defendant, Ms. Ponton's proposed Internal DNC Class is objectively ascertainable from Fly Vaunt's own records, turns on documentary evidence the FCC expressly made central, and does not require pre-certification merits rulings to identify members. For those reasons, Fly Vaunt's

reliance on *Winters* is misplaced and does not provide a basis to strike the class at the pleading stage.[2]

Finally, even if individualized issues exist, Rule 12(f) is not the mechanism to resolve them. The propriety of class certification is governed by Rule 23 and the court's robust authority at the certification stage to examine the record, weigh evidence, and tailor classes or subclasses as appropriate. Striking class allegations at the pleading stage based on predictions about how individualized issues might be addressed is premature and disfavored where, as here, class membership is based on objective criteria, and the defendant's own records are likely to resolve key factual disputes. Indeed, "in the Ninth Circuit, it is not necessary to deny certification (or in this case strike class allegations) simply because the initially proposed class is a 'fail safe' class." *Olney v. Job.Com, Inc.*, 2013 U.S. Dist. LEXIS 141339, 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013) (citing *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 546 (N.D. Cal. 2012)). "Rather, the proposed class may be redefined to avoid ascertainably problems." *Id.* (citing *In re AutoZone*, 289 F.R.D. at 546).

For these reasons the Court should deny Fly Vaunt's motion to strike the Internal DNC Class.[3]

---

[2] *Winters* also granted leave to amend, underscoring that striking class allegations is an especially cautious remedy. *Winters*, 2022 U.S. Dist. LEXIS 47778, at *22–23.

[3] If the Court has any concern with the current wording, Ms. Ponton respectfully requests leave to clarify that the class membership is determined by Fly Vaunt's objective records (*e.g.,* "All persons within the United States to whom Defendant (or a third party acting on its behalf) sent two or more telemarketing calls or text messages within any 12-month period, where Defendant's records reflect that (a) a recorded do-not-call or opt-out entry exists for the person, and (b) Defendant's records show two or more telemarketing calls or texts were sent to that telephone number within a 12-month period, within four years prior to the filing of the Complaint."). While Ms. Ponton respectfully submits that such clarification should not be necessary, she requests leave to amend should the Court conclude otherwise, and further submits that amendment is the more appropriate alternative to striking the class allegations at the pleading stage, before any discovery has occurred.

**CONCLUSION**

Ms. Ponton's First Amended Complaint plausibly alleges that Defendant violated the TCPA by continuing to send telemarketing messages after multiple do-not-call requests, despite having the capacity to stop immediately. Defendant's motion improperly asks the Court to resolve factual disputes and adopt a categorical rule that finds no support in the statute or regulations. Defendant's motion to dismiss should be denied in its entirety.

RESPECTFULLY SUBMITTED AND DATED this 27th day of March, 2026.

*/s/ Carly M. Roman*
Carly M. Roman (SBN #040895)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Carly M. Roman, hereby certify that on March 27, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 27th day of March, 2026.

Respectfully submitted,

*/s/ Carly M. Roman*
Carly M. Roman (SBN #040895)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff*